## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LAWRENCE H. PUCH &  )
JENNIFER C. PUCH,  )
                   )
       Plaintiffs,  )      Case No. 05 C 1114
                   )
       v.  )      Judge Joan B. Gottschall
                   )
VILLAGE OF GLENWOOD, ILLINOIS;  )      Magistrate Judge Mason
KEVIN WELSH, GLENWOOD CHIEF  )
OF POLICE, Individually and in his official  )
capacity; OFFICER TH. JOHNSON,  )
Glenwood Police Department, Individually  )
and in his official capacity; OFFICER JOE  )
WILLETT, Glenwood Police Department,  )
Individually and in his official capacity; the  )
GLENWOOD POLICE DEPARTMENT;  )
OTHER UNKNOWN OFFICERS of the  )
Glenwood Police Department; and  )
OTHER UNKNOWN OFFICERS,  )
                   )
       Defendants.  )

## MEMORANDUM OPINION AND ORDER

This case arises from an incident where police entered the home of the plaintiffs,

Lawrence and Jennifer Puch (collectively, "the Puches"), and arrested Lawrence Puch ("Mr.

Puch"). Following the incident, the Puches filed a seven-count complaint alleging violations of

their Fourth Amendment rights, assault, conspiracy, negligent training and supervision, and two

counts of intentional infliction of emotional distress, as well as counts for *respondeat superior*

and indemnification. Before the court are five motions for summary judgment:[1] a motion by

---

[1] A sixth motion for summary judgment was filed on August 27, 2008 by defendants Willett, Welsh, Johnson, and the Village of Glenwood in respect of Lawrence Puch's false arrest claim, which is part of Count I. The motion is currently being briefed. No motions were brought as to Count IV (*respondeat superior*) or Count V (indemnification), as resolution of these claims necessary depends on the plaintiffs' success on other claims.

defendant Joe Willett ("Willett") for summary judgment; a motion by defendant Village of Glenwood ("Glenwood") for summary judgment; a motion by defendant TH. Johnson ("Johnson") for summary judgment; a motion by defendant Kevin Welsh ("Welsh") for summary judgment; and the Puches' cross-motion for partial summary judgment on their improper entry claim against defendants Johnson and Willett. For the reasons stated below, the plaintiffs' motion is denied, defendant Welsh's motion is granted, defendant Glenwood's motion is granted, and defendants Johnson's and Willett's motions are granted in part and denied in part.

## I. BACKGROUND[2]

At all times relevant, the Puches lived at 235 Ellis in Glenwood, Illinois, Welsh was Glenwood Police Department's Chief of Police, and Johnson and Willett were police officers with the Glenwood Police Department.

On September 29, 2004, the Puches were at home. They had been arguing, on and off, for a couple of hours. Willie Bedell ("Bedell") lived across the street from the Puches. That afternoon, Bedell received a phone call from a neighbor who told him the Puches were fighting and screaming and that she had seen a bleeding man in the driveway of the Puches' home. Bedell agreed to call 911, even though he had not seen or heard anything himself, because the neighbor was unwilling to do so despite being worried about the situation.

Bedell placed the 911 call and reported that another neighbor had seen a bleeding man and heard a woman screaming in or near the Puches' home. The Village of Glenwood responded by dispatching an officer to the scene. Officer Johnson arrived at the Puches' house and spoke to Bedell, who was walking his dog at the time Johnson arrived. Johnson heard an argument of

---

[2] Facts are taken from the parties' Rule 56.1 statements of material facts and are undisputed, either because the parties agree that they are undisputed or because the disputes are unsupported by the record. Facts relevant to specific claims are discussed in the applicable section.

some kind coming from inside the home and knocked on the Puches' door. He looked through the window of the Puches' home. Officer Willett arrived on the scene shortly thereafter, having heard a radio report, and Johnson reported the situation to him. Willett also looked through the window. The Puches did not come to the door and indicated to the police officers that they should leave. At Willett's instruction, Johnson kicked in the door and the officers made a warrantless entry into the Puches' home. Shortly after Mr. Puch was arrested, he requested medical treatment. The paramedics were called and Mr. Puch was taken to St. James Hospital. He was later transferred to a Tinley Park Mental Health facility.

## II. ANALYSIS

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). It is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the opposing party. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991).

In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. In response, the non-moving party cannot rest on the pleadings, but must designate specific

material facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp.*, 477 U.S. at 323-24. "Surmise or suspicion does not rise to the dignity of a genuine issue as to material fact." *Kirk v. Home Indem. Co.*, 431 F.2d 554, 562 (7th Cir. 1970). Consequently, Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

**A.      Cross-Motions For Summary Judgment: Count I, Unlawful Entry[3]**

On cross-motions for summary judgment, the traditional standards for summary judgment apply and each movant must individually satisfy Rule 56's requirements. *Blum v. Fisher*, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997) (citing *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996)). The court therefore considers the merits of each motion separately and draws all reasonable inferences and resolves all factual uncertainties in favor of the non-moving party.

The Puches move for summary judgment on their § 1983 unlawful entry claim, arguing that Willett and Johnson entered their home without a warrant and in the absence of exigent circumstances in clear violation of their Fourth Amendment rights. Willett and Johnson argue that they are entitled to qualified immunity because they did not violate the Puches' constitutional rights where a 911 call provided sufficient information to justify a warrantless entry, or, in the alternative, they reasonably believed that, under established Seventh Circuit law, they were acting in accordance with the boundaries of the exigent circumstances exception.

---

[3] Although, at times, the Puches refer to this as a claim for an unreasonable *search*, as the court noted in its order denying the defendants' motion to dismiss, the claim is more appropriately construed as being based on an unlawful *entry*. *See* Order at 5, No. 05 C 1114 (May 5, 2006) (docket no. 74).

1. <u>Legal Standard: Warrantless Searches</u>

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Puches correctly note that warrantless searches of a home are *per se* unreasonable under the Fourth Amendment, "subject only to a few specifically established and well-delineated exceptions." *Katz. v. U.S.*, 389 U.S. 347, 357 (1967); *see U.S. v. Veras*, 51 F.3d 1365, 1371 (7th Cir. 1995). One of those exceptions is "'when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant.'" *U.S. v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003) (quoting *U.S. v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003)). The test for whether exigent circumstances exist is objective, not subjective; therefore, "'the government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house . . . required immediate assistance.'" *U.S. v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000) (quoting *U.S. v. Arch*, 7 F.3d 1300, 1303-05 (7th Cir. 1993)). A report of a crime in progress heightens the concern for the safety of others and, in such circumstances, "police judgments regarding warrantless entries 'should be afforded an extra degree of deference.'" *Id.* (quoting *Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir. 1987)).

The Puches argue that the sanctity of a private citizen's home has long been afforded Fourth Amendment protection and the facts show that Johnson and Willett did not have an objectively reasonable basis for believing exigent circumstances existed. They admit that "[m]ost facts surrounding the February 29, 2004 incident at Plaintiffs' residence are in dispute," yet they contend that there is an absence of *material* fact in regard to the unconstitutionality of the actions of Johnson and Willett. *See* Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 2.

Typically, on a plaintiffs' cross-motion for summary judgment, the court reviews the facts in the light most favorable to the defendants to determine whether a genuine issue of material fact exists; however, in this case defendants Johnson and Willett have raised the defense of qualified immunity. A court reviewing a defendant's entitlement to qualified immunity undertakes a two part inquiry to determine: (1) whether the facts alleged, *when taken in the light most favorable to the plaintiff*, show the officer's conduct violated a constitutional right; (2) if so, whether the right was clearly established such that a reasonable officer would understand that the conduct was unlawful. *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). Thus, in this case, the analysis of the Puches' cross-motion for summary judgment mirrors that employed to decide Johnson and Willett's cross-motions.

The parties' statements of material fact are replete with disputed facts, resolution of which depends on a credibility assessment inappropriate for summary judgment. *Chavez v. Ill. State Police*, 251 F.3d 612, 634 (7th Cir. 2001).[4] Nevertheless, a careful parsing of the parties' statements of facts allows extraction of the following facts as undisputed and known to the officers at the time of the entry. On September 29, 2004, Bedell, the Puches' neighbor, placed a 911 call. He reported that his neighbor had seen a bleeding man and heard a woman screaming in or near the Puches' home.[5] Johnson arrived at the scene and spoke to Bedell.[6] Johnson heard

---

[4] For example, the parties dispute whether Mrs. Puch was crying when the officers saw her, whether the Puches were yelling when Johnson arrived, whether the Puches stated a reason for not wanting the officers to enter, and whether the officers explained their purpose and announced that they would make a forced entry if the Puches did not come to the door.

[5] The parties dispute the exact content of the dispatch. *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 24 (citing to Ex. 26 to support denial where Ex. 26, a GPD Incident report, states the report was "of a man bleeding in the driveway and a female subject screaming and crying").

[6] The parties dispute whether Bedell simply confirmed that he made the 911 call and pointed out the Puches' house or if he told the officer that he had seen a bleeding man and heard screams from the Puches' house. *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 33.

an argument of some kind coming from inside the home.[7]  At least one of the Puches heard Johnson knock on the door.[8]  Johnson could see at least one of the Puches through the window and he could likewise be seen.[9]  At least one of the Puches said or did something to indicate that Johnson should go away.[10]  Willett arrived on the scene, having heard a radio report, and Johnson reported the situation to him.[11]  Willett also looked through the window.[12]  One or both of the Puches knew the officers were at the door.[13]  The Puches heard Johnson say: "Open the door."[14]  The Puches did not come to the door and, at Willett's instruction, Johnson kicked in the door.[15]

The Puches argue that, in light of the facts, the officers' actions[16] were obviously violative of the Fourth Amendment.  The Puches contend that no probable cause existed because

---

[7] The Puches do not dispute that Johnson heard an argument, but state that they were not arguing at that time and infer that the argument was on the television.  *See* Pls.' Rule 56.1 Statement of Material Facts ¶¶ 19-21.

[8] *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 37 (stating that Mr. Puch responded to Johnson's knock by saying: "What do you want?").

[9] The Puches dispute that only Mrs. Puch was in the room and contend that they were both in the room, in plain view, and both saw Johnson.  *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶¶ 35, 47.

[10] *See, e.g.*, Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 37 (disputing that no response was made to the officer's knock and stating that Mr. Puch asked what the officers wanted and Mrs. Puch told them to go away because she was not dressed properly); ¶ 39 (disputing that Mrs. Puch waved Johnson away and stating that she told him to go away because she was not dressed properly).

[11] *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 43 (admitting the officers spoke for "one to two minutes").

[12] *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 47 (asserting that Mr. Puch was visible in addition to Mrs. Puch).

[13] *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 49 ("Plaintiffs admits [sic] that they became aware of Officers Johnson and Willett's presence at their door . . . .").

[14] *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 100 (disputing that the officers said they needed to speak to someone, but admitting Johnson said "Open the door").

[15] *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 51.

[16] Because the sum total of what was known at the time of entry is identical for both officers, and because the arguments made are identical, the court considers the claims against Johnson and Willett together.

the 911 call did not come from an eyewitness and the officers failed to give sufficient weight to evidence that suggested the situation was not emergent, such as the fact they could see Mr. and Mrs. Puch through the windows. The Puches argue that the officers acted rashly and failed to investigate fully before breaking down their door, especially given that Johnson and Willett did not see any property damage or evidence of any act of violence. They suggest that Johnson and Willett are covering up the lack of probable cause by making up facts, including that Mrs. Puch was crying and that Bedell told Johnson that he had personally seen the bleeding man and heard the screams.

Typically, disparate accounts of what happened would create a genuine question of material fact sufficient to withstand summary judgment. However, in this case, even if the jury believed the Puches' version of the facts in its entirety, the *undisputed* facts still support a finding of exigent circumstances given that the police received a 911 call from an identified neighbor, reporting a bleeding person and screams coming from the vicinity of the Puches' house, and the Puches did not answer the door in response to the police officers' knocks.[17] "A 911 call is one of the most common—and universally recognized—means through which police . . . learn that there is someone in a dangerous situation who urgently needs help." *Richardson*, 208 F.3d at 629. Based on those circumstances, a reasonable officer would have feared for the safety of someone inside. Contrary to the Puches' argument, the fact that two uninjured people were visible does not eradicate the exigency given that the officers did not know the identity of

---

[17] The Puches dispute that this is what was told to the 911 operator because the 911 tapes were destroyed. *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 24. However, in their depositions, Johnson, Willett, and Bedell all stated that the report was of a bleeding man and a screaming woman at the Puches' home. *See* Bedell Dep. 61:11-15; Johnson Dep. 62:4-8; Willett Dep. 32:23-33:2. In light of the corroboration of the content of the call from the person who made the call and the lack of evidence supporting the Puches suspicion, the lack of the tape itself does not raise an issue of genuine material fact regarding the content of the 911 report.

the bleeding man or the screaming woman and could not know whether the Puches were the alleged victims or perpetrators. Considering all factors, the court concludes that the Puches have failed to raise a triable issue of fact as to the lack of exigent circumstances. *See Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995) (noting that a court is "not required to draw every conceivable inference in favor of the nonmoving party" but rather should "allow only those inferences that are reasonable and present 'a sufficient disagreement to require submission to a jury'").

Even if the court were to conclude that the facts did not support a warrantless entry pursuant to exigent circumstances, the doctrine of qualified immunity mandates a ruling in favor of the defendants. To defeat a defense of qualified immunity, a plaintiff "must demonstrate that a reasonable official, confronted with the specific facts at issue and the law in effect at the time, would have known that his conduct violated the plaintiff's constitutional rights." *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir. 1989) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Seventh Circuit has held that 911 emergency calls "by themselves, 'can be enough to support warrantless searches under the exigent circumstances exception, particularly where . . . the caller identified himself.'" *Jenkins*, 329 F.3d at 581 (citing *Richardson*, 208 F.3d at 630-31).[18] Both *Jenkins* and *Richardson* were decided before the incident in question; therefore, even if Johnson and Willett had acted on the basis of only the 911 call from Bedell, their belief that it was lawful to enter the Puches' home without a warrant would have been reasonable. Consequently, even if the court were to conclude that the totality of the circumstances did not support a warrantless entry, Johnson and Willett are entitled to qualified immunity for reasonably believing that such an entry was lawful. The plaintiff's

---

[18] The Puches fail to address this case law in their response to the defendants' summary judgment motion or their reply in support of their own motion.

motion for partial summary judgment on their unlawful entry claim is denied and the defendants'
motion is granted.

**B.** **Defendants Johnson's and Willett's Motions For Summary Judgment**

1. Count I: Excessive Force

Both Johnson and Willett move for summary judgment on Mr. Puch's claim, in Count I,
for excessive force. In response, the Puches state that Mr. Puch does not seek to hold Willett
liable for excessive force; therefore, Willett's motion is granted. However, the Puches dispute
Johnson's contentions that: (1) he did not use excessive force when handcuffing Mr. Puch; and
(2) even if there is a question of material fact as to whether Johnson used excessive force, he is
entitled to qualified immunity for his actions.

As an initial matter, the court takes judicial notice of Mr. Puch's May 29, 2008
conviction for resisting or obstructing a police officer. *See* Defs.' Mot. for Summ. J. Directed To
Lawrence Puch's False Arrest Claim, Ex. B (misdemeanor complaint for "resisting a peace
officer" in case number 04-MC6-003105 in the Circuit Court of Cook County, Illinois); *id.* Ex. E
(jury verdict form finding Lawrence Puch guilty of resisting or obstructing a peace officer)
(docket no. 182). This conviction arises out of the same February 29, 2004 incident as the
excessive force claim. Given the conviction, a question arises as to whether some of Mr. Puch's
claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), a matter not addressed by the
parties (likely because the conviction came down after briefing was complete). Pursuant to
*Heck*:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff would necessarily imply the
> invalidity of the conviction or sentence; if it would, the complaint must be
> dismissed unless the plaintiff can demonstrate that the conviction or sentence has
> already been invalidated. But if the district court determines that the plaintiff's
> action, even if successful, will not demonstrate the invalidity of any outstanding

> criminal judgment against the plaintiff, the action should be allowed to proceed,
> in the absence of some other bar to the suit.

*Id.* at 487. The *Heck* bar does not apply only to prisoners, or even only to convicted persons, "but also to plaintiffs . . . who as yet only face prosecution." *Wiley v. City of Chicago*, 361 F.3d 994, 996 (7th Cir. 2004) (citing *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 2004)).

"[A] plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not per se *Heck*-barred from maintaining a § 1983 action for excessive force stemming from the same confrontation." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). However, the inquiry as to whether such an excessive force claim "necessarily" implies the invalidity of a criminal conviction for resisting an officer is fact-specific and depends on a close comparison of the pleadings. *See, e.g.*, *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 764 (7th Cir. 2008) (no bar where an interrogatory response that the plaintiff was "peaceably waiting to be handcuffed" did not necessarily contravene the fact that he "struggled while being handcuffed" as stated in the criminal charge because the two events could have taken place at different times); *McCann v. Neilsen*, 466 F.3d 619, 622 (7th Cir. 2006) (no bar where an ambiguous allegation in the § 1983 complaint could be read as alleging that the plaintiff "never posed a threat of violence, attempted escape, or resisted arrest *to a degree* that would have justified" the alleged use of force); *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006) (no bar where plaintiff "claims that he suffered unnecessary injuries because [the officer's] response to his resistance . . . was not, under the law governing excessive use of force, objectively reasonable.").

The record before the court is incomplete in that it does not contain the full factual basis for the criminal conviction for comparison with the allegations and record in this case. *See* *VanGilder*, 435 F.3d at 691 ("To properly apply *Heck*'s bar against certain damage actions, a

district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted."). The material facts for the excessive force claim are heavily disputed. For example, Mr. Puch denies that he confronted the officers, that he screamed at the officers, that he moved toward the officers, the he was told he was under arrest before he was physically restrained, and that he refused to put his hands behind his back. *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶¶ 55-59. In Mr. Puch's version of events, he was, despite offering no resistance, physically grabbed, forced to his knees, and handcuffed before he was told he was under arrest. *Id.* ¶ 57. It appears that at least some of the facts denied in this case were at issue in the state criminal case. *Compare* Defs.' Mot. for Summ. J. Directed To Lawrence Puch's False Arrest Claim, Ex. B (Misdemeanor Complaint alleging that Mr. Puch resisted a peace officer "in that he pushed away from Tom Johnson during the arrest process"), *with* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 58 ("Mr. Puch denies . . . pushing himself away from the officers"). In light of the possibility of a *Heck* bar, the court declines to decide the summary judgment motion absent a full record and briefing from the parties on the import of *Heck*. Therefore, Johnson's motion for summary judgment on the excessive force claim is denied without prejudice.

2.     <u>Count II: Assault</u>

The Puches allege that they "were in fear of immediate bodily harm when they witnessed [Johnson and Willett] approaching them, without provocation, after the . . . officers forcibly and loudly broke into and entered Plaintiffs' residence." Am. Compl. ¶ 27. Both Johnson and Willett argue that the Puches have failed to make a showing sufficient to establish the existence of a *prima facie* assault case and, in any event, cannot establish that the officers' conduct was

"willful and wanton," as required to trigger a liability finding against a public employee.[19]

Under the Illinois Criminal Code, "[a] person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery." *See* 720 Ill. Comp. Stat. 5/12-1; *see also id.* 5/12-3 ("A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."). In the civil context, "an assault can be defined as an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Parrish by Bowker v. Donahue*, 443 N.E.2d 786, 788 (Ill. App. Ct. 1982); *accord Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994).

It is undisputed that Johnson kicked in the Puches' door. In their response, the Puches rely on the following additional (disputed) facts to establish their assault claim: Willett ran towards Mrs. Puch and yelled at her, asking who she thought she was and why she did not open the door; Johnson ran toward Mr. Puch, told him to stand, grabbed his arm and forced him to his knees. *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 55 (citing to the depositions of Mr. and Mrs. Puch). Even taking the allegations as true, the defendants argue that such behavior does not constitute willful and wanton conduct. *See, e.g.*, *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (affirming summary judgment in favor of the officer on a battery claim where the officer "pull[ed] a suspect from a car, push[ed] him against the car, and pinn[ed] his arms behind his back to handcuff him"); *Jones v. Vill. of Villa Park*, 815 F.

---

[19] The Illinois Local Governmental and Governmental Employees Tort Immunity Act provides in relevant part that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202.

Supp. 249, 254 (N.D. Ill. 1993) (concluding that the use of handcuffs during an arrest did not support a claim for assault and battery).

Mr. Puch's sole allegation against Willett is that Willett ran into the room yelling after the door was kicked in. Such action is clearly part of the Willett's entry into the house, which the court has concluded was legally justified by exigent circumstances.[20] Therefore Willett's motion for summary judgment is granted as to Mr. Puch. The contact between Mr. Puch and Johnson relates either to Johnson's entry into the house or to the manner in which Mr. Puch was arrested. Thus, for the same reasons as in § II(B)(1), *supra*, the court denies Johnson's motion for summary judgment without prejudice in light of a possible *Heck* bar.

No *Heck* problem exists with Mrs. Puch's claim because she was not convicted of resisting arrest. The only allegation Mrs. Puch makes against Johnson is that he kicked in the door and ran into the room, which the court has found he was legally justified in doing. Therefore, Johnson's motion for summary judgment is granted as to Mrs. Puch. Mrs. Puch's allegations are directly mainly toward Willett, whom she says ran toward her yelling. Tort claims against police officers must satisfy a "willful or wanton conduct" scienter requirement. "The Illinois courts have held that a police officer is not guilty of willful or wanton conduct unless he acted with 'actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008) (internal citations omitted). The Puches cite to no cases to support their theory that running and yelling while executing a lawful warrantless entry into a home following a 911 call constitutes willful and wanton conduct by an officer. The court declines to extend the cause of action so far. Willett's motion for summary judgment on this count is consequently granted as to

---

[20] Willett argues that Mr. Puch has abandoned his assault claim by failing to produce evidence or argue that Willett's actions placed him in fear.

Mrs. Puch also.

3.    Count III: Conspiracy

Willett moves for summary judgment on the Puches' conspiracy claim, arguing that they cannot establish the elements. Johnson adopts Willett's opening arguments and submits a separate reply in support. The parties both brief this issue pursuant to Illinois state law. However, the Puches allege that Johnson and Willett "by their actions and through common design, on February 29, 2004 unlawfully conspired to deprive Plaintiffs *of their constitutional rights*." Am. Compl. ¶ 31 (emphasis added). They expand on their claim in their response brief as follows:

> In this case the rights interfered with by Officer Willett and his co-conspirators are Mr. and Mrs. Puch's right to be free the [sic] unreasonable search of their home, Mr. Puch's right to be free from false arrest and excessive force from the police, and Mr. Puch's right to be free from having police officer's [sic] present false evidence against him.

Pls.' Resp. to Def. Willett's Mot. for Summ. J. at 12. Thus, the Puches frame the issue as a federal § 1983 conspiracy claim, not a state law claim. The briefing and case citations provided by both sides are, therefore, inapposite.

"[T]o establish a *prima facia* case of a civil conspiracy [under § 1983], a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *See Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). The Puches, in large part, argue that Johnson and Willett conspired to deprive them of their Fourth Amendment constitutional right to be free from unreasonable searches and seizures. Mr. Puch also claims the right to be free from having police officers present false evidence against him. Such "efforts by state actors to impede an individual's access to courts . . . may provide the basis for a constitutional claim under 42 U.S.C. § 1983." *See Cefalu v. Vill. of Elk Grove*, 211 F.3d

416, 422 (7th Cir. 2000).

The court has already granted summary judgment in favor of Johnson and Willett on the Puches' claim of a Fourth Amendment violation for unreasonable entry into their home and in favor of Willett on Mr. Puch's excessive force claim. Thus, the defendants' motions for summary judgment on the conspiracy claim are granted in part as to these underlying constitutional claims. *See id.* at 423 (observing that a "conclusion that the [plaintiff] suffered no constitutional injury . . . forecloses relief on the conspiracy claim"). The court has declined to decide Johnson's motion for summary judgment in respect to Mr. Puch's excessive force claim in light of a possible *Heck* bar and the motion for summary judgment on Mr. Puch's false arrest claim is still being briefed. Thus, it would be premature to determine the validity of a conspiracy claim on these claims. Mr. Puch's claim regarding false evidence will be considered only if he prevails on another constitutional claim because "'there is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution.'" *See Cefalu v. Vill. of Elk Grove*, 211 F.3d at 422 (quoting *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996)). Consequently, the defendants' motions for summary judgment on the conspiracy claim are denied in part, without prejudice, and granted in part as to the underlying Fourth Amendment claims for unlawful entry and Mr. Puch's claim against Willett for excessive force.

4.    Counts VII-VIII: Intentional Infliction of Emotional Distress

Willett argues, and Johnson adopts the argument, that neither plaintiff can establish a single element of this claim. The parties agree that, under Illinois law, "a plaintiff must satisfy three requirements for a showing of intentional infliction of emotional distress: '(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct

will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress.'" *Lewis v. Sch. Dist. No. 70*, 523 F.3d 730, 746 (7th Cir. 2008) (quoting *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001); *accord Tuite v. Corbitt*, 830 N.E.2d 779, 789 (Ill. App. Ct. 2005).

The Puches argue that the entry into their home was extreme, outrageous and malicious and that the allegedly false arrest of Mr. Puch and the subsequent alleged cover-up compounded the severity of the officers' actions. They argue that "Mrs. Puch was shocked by the incident and she has suffered from insomnia since this incident." Pls.' Resp. to Def. Willett's Mot. for Summ. J. at 14. Leaving aside the question of whether this constitutes "severe emotional distress," Mrs. Puch's claim fails for the simple reason that the Puches do not support the assertion of emotional distress with any citation to their statement of facts or to the record. The Puches have an obligation to "identify with particularity the evidence that precludes summary judgment." *See Richards*, 55 F.3d at 251 ("It is not [the] task . . . of the district court[] to scour the record in search of a genuine issue of triable fact."). Thus, both Johnson and Willett's motions for summary judgment on Mrs. Puch's claims for intentional infliction of emotional distress ("IIED") are granted.

Mr. Puch, on the other hand, has presented evidence that he experienced medical issues following his encounter with the officers. Although the reasons are disputed, both parties agree that Johnson called for paramedics to attend to Mr. Puch following his arrest, that Mr. Puch was transported to a hospital, and that he was subsequently transferred to the Tinley Park Mental Health Facility. Defs.' Resp. to Pls.' Rev. Additional Facts ¶¶ 107.2, 107.4. Mr. Puch argues that the incident aggravated a pre-existing condition of Post-Traumatic Stress Disorder. *See* Pls.' Rev. Additional Facts ¶ 108 (citing to Mr. Puch's deposition). As the defendants point out, lay

testimony on a psychological condition is inadmissible because it is clearly "based on scientific, technical, or other specialized knowledge." *See* Fed. R. Evid. 701. However, in his deposition, Mr. Puch describes an increase in the frequency of nightmares, the fact that the nightmares involve the Glenwood Police Department, and an increase in thoughts of suicide that he has experienced since the incident. *See* Puch Dep. 112:3-10 (nightmare frequency); *id.* 113:12-21 (topic of nightmares); *id.* 242:21-23 (suicidal thoughts). Mr. Puch is obviously qualified to testify about his own experiences; therefore, to that extent the court does not disregard the evidence. The record lacks supporting evidence (other than the defendants' admissions regarding hospital admission), such as medical reports, deposition testimony from treating physicians, or records of lost work time. However, the weight of the evidence is more properly determined by the jury, not the court and, at this stage, Mr. Puch has sufficiently raised a question of material fact as to whether he suffered severe emotional distress.

The defendants also argue that Mr. Puch cannot establish the other two elements of his claim for IIED. The objective standard to show IIED is high and "the defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized society." *Lewis*, 523 F.3d at 746 (citing *Honaker*, 256 F.3d at 490). It is well-established that IIED "does not arise from threats, insults, indignities, annoyances, or petty oppressions, but coercion, abuse of power or authority, and harassment." *See Brackett v. Galesburg Clinic Ass'n*, 689 N.E.2d 406, 409 (Ill. App. Ct. 1997). As a result, IIED cases typically proceed only where police behavior is egregious. *See, e.g.*, *Lopez v. City of Chicago*, 464 F.3d 711, 721 (7th Cir. 2006) (discussing allegations of deprivation of food, water and bathroom access by police to force a confession to murder); *Doe v. Calument City*, 641 N.E.2d 498, 508 (Ill. 1994) (finding the facts to be sufficiently outrageous where a supervising police officer, when advised by a

victim that an intruder had entered her home, attacked her, and locked himself in the home with the children after threatening to kill them, responded in a "rude, demeaning, and accusatory manner," asked inappropriate questions, and refused to break down the door because he did not want to be responsible for property damage).

The officers' forced entry into the Puches' home cannot, as a matter of law, be considered "intolerable in a civilized society" due to the fact they were responding to a 911 call. Thus, only events *after* the entry can form the basis for the IIED claim. Mr. Puch makes no allegations against Willett for assault or excessive force and the court concludes that the only actions of Willett at issue here are those of a "cover-up" that are asserted in support of the conspiracy claim. The allegations against Johnson are the same as for the false arrest, excessive force, assault, and conspiracy claims. The court has observed that the remaining Fourth Amendment and assault claims may be *Heck*-barred; if so, then it follows that the IIED claim, which relies upon the same facts, may also be barred. However, if no *Heck*-bar exists, and if the jury finds for Mr. Puch on the underlying Fourth Amendment, assault and/or conspiracy claims, they might also conclude that a reasonable person could find such actions by a police officer to be extreme, outrageous, and intended to inflict severe emotional harm. *Cf. Lopez*, 464 F.3d at 721 (reversing summary judgment where the stories presented by the police and plaintiff were "incompatible," indicating that one of them was lying). Therefore determination of whether a claim for IIED can proceed depends upon the impact of *Heck* on this case. Consequently, the defendants' motions for summary judgment on Mr. Puch's IIED claim are also denied without prejudice.

## C.    Welsh's Motion For Summary Judgment

Welsh moves for summary judgment on Count VI, negligent training and supervision,

arguing that the Puches cannot establish the elements of the claim, or, in the alternative, immunity applies under Illinois state law.  In response, the Puches lay out their claims under both § 1983 and state law, without addressing Welsh's argument that the Puches did not provide notice of any § 1983 claim against him.[21]  The Puches' § 1983 claim seeks to hold Welsh personally liable for the acts of Johnson and/or Willett.  *See, e.g.*, *Chavez v. Ill. State Police*, 251 F.3d 612 (7th Cir. 2001) (noting that although the doctrine of *respondeat superior* does not apply to § 1983 claims, a supervisor may be found liable for the actions of a subordinate "if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it").  Despite the lack of response from the Puches, the court will not overlook Welsh's argument of lack of notice given that allowing a § 1983 claim to proceed would considerably expand the scope of Welsh's potential liability.

A review of the Amended Complaint reveals that Welsh's name appears in the prefatory paragraphs and in Count VI, which is unambiguously titled "Negligent Training and Supervision."  The Puches allege that Welsh was "under a duty to properly train, supervise, investigate, and correct improper actions of [Glenwood Police Department] officers."  Am. Compl. ¶ 39.  They further allege that Welsh "recklessly and with disregard for the rights of others, breached [his] duty to properly train, supervise, investigate, and correct the improper actions of [his] employee police officers."  *Id.* ¶ 40.  The language employed in Count VI unambiguously sounds in negligence, not § 1983.

_____

[21] The court assumes that Welsh had some inkling that this claim was possible; otherwise he would not have preemptively argued in his summary judgment motion that the Puches pled only a state law claim.  However, that does not obviate the responsibility of the plaintiff to give formal notice of the claims against a defendant to enable him to mount an adequate defense.  *See Bell Atl. Corp. v. Twombly,* __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (requiring the allegations of the complaint to provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests").

A review of Count I, which is brought under § 1983, leads to the conclusion that Welsh was not included. The factual paragraphs discuss the alleged actions by Johnson and Willett. A "policy and practice" claim is raised against "Glenwood Police Department," and the Puches allege that "*the Village of Glenwood* has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs . . . ." *Id.* ¶ 24(e) (emphasis added); *see also id.* ¶ 26 ("As a result of Defendant Officer's unjustified and excessive use of force, as well as the Village of Glenwood's policy and practice, Plaintiff's have suffered pain and injury as well as emotional distress."). The Puches' complaint was detailed, in that it carefully outlined the legal claim being asserted and pled facts in line with the elements of those claims. An absence of a specific claim against a specific defendant is therefore reasonably read to mean that such a claim is not being advanced. No § 1983 claim was pled against Welsh; therefore, the court concludes that the complaint failed to provide Welsh with sufficient notice of the § 1983 claim against him to allow him to prepare an adequate defense.[22]

The Puches failed to seek leave to amend their complaint following discovery and the court will not allow them to amend their complaint at this late stage, especially since they failed to seek leave to do so and offer no explanation as to why such an amendment should be allowed. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). The § 1983 claim against Welsh is dismissed.

Welsh next argues that the Puches have abandoned any claim for negligent training. The court agrees. In their response, the Puches state that they "can establish a prima facie case

---

[22] Moreover, any claim against Welsh in his official capacity is likely duplicative of the § 1983 claim against Glenwood. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 638, 690 n.55 (1978) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").

against Chief Welsh *for negligent supervision* under Illinois [l]aw." Pls.' Resp. to Def. Welsh's Mot. for Summ. J. at 9 (emphasis added). They do not discuss negligent training and the facts and argument relied upon in the brief support the conclusion that no claim for negligent training is being pursued. Therefore, the sole claim remaining against Welsh is negligent supervision. A claim for negligent supervision exists where "[(1)] the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and [(2)] the employer's failure to safeguard the plaintiff against this particular unfitness proximately caused the plaintiff's injury." *Platson v. NSM, Am., Inc.*, 748 N.E.2d 1278, 1284 (Ill. App. Ct. 2001) (internal citations omitted). "The particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Id.*

The Puches' § 1983 claim rests on Welsh's alleged "failure to investigate allegations of police misconduct" and his alleged intentional destruction of incriminating evidence, including tapes of 911 calls. Pls.' Resp. to Def. Welsh's Mot. for Summ. J. at 9. In particular, the claim rests on Welsh's alleged failure to monitor and investigate prior complaints of misconduct against Willett. *Id.* ("Plaintiff must prove that Chief Welsh knew or should have known that Officer Willett had a particular unfitness for his position that creates the risk of harm to the public and that Chief Welsh's failure to safeguard the plaintiff against this risk proximately caused the plaintiff's injury."). The Puches' allegations of injury are the same as those in their unlawful entry and assault claims, namely Willett's forced entry into their home and his actions after entry, namely running toward Mrs. Puch yelling. Assuming for the moment that the Puches can prove that Welsh is the defendant officers' "employer," the Puches have argued themselves into a tight spot, given the court has ruled that Willett's actions were not actionable under § 1983

or common law assault theories. The lack of a predicate act that caused the Puches a compensable injury negates any claim for negligent supervision in respect to Willett. *See Carter v. Skokie Valley Detective Agency*, Ltd., 628 N.E.2d 602 (Ill. App. Ct. 1993) (requiring a "tangible connection" between the particular unfitness and the harm to the plaintiff). The remaining claims for assault and excessive force are against Johnson. However, the Puches make no allegations or argument as to Welsh's negligent supervision of Johnson. The Puches have, therefore, failed to make out a *prima facie* case of negligent supervision and the court grants Welsh's motion for summary judgment without reaching his arguments on immunity.

## D.   Glenwood's Motion For Summary Judgment

The Puches seek to hold Glenwood responsible on the basis of its alleged "deliberate indifference" to their constitutional rights as shown by its established practice of ignoring or failing to investigate complaints of false arrest and excessive force adequately and of actively hindering investigations into police misconduct by destroying physical evidence. Pls.' Resp. to Def. Vill. of Glenwood's Mot. for Summ. J. at 7. To state a claim against a municipality under § 1983 and *Monell*,[23] the Puches must prove one of three forms of unconstitutional policies or customs, either:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Klebanowski v. Sheahan*, ___ F.3d ____, 2008 WL 4051038, at *4 (7th Cir. Sept. 8, 2008) (citing *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003)). "Because a municipality is only liable for deliberate conduct, the plaintiffs must also show that [the municipality's] policymakers were deliberately indifferent as to the custom's known or obvious consequences." *Montano v.*

---

[23] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 638 (1978).

*City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008).

The Puches do not seem to argue that Glenwood has an express policy that suggests it should ignore citizen complaints,[24] nor do they argue that any final policymaker caused the constitutional injury; rather, they seem to elect to proceed under the "widespread practice" test. Assuming for the moment that the Puches are able to prove that the officers violated Mr. Puch's constitutional rights, to prevail on a *Monell* claim against Glenwood, the Puches would have to prove that: Welsh was a policymaker (which is disputed); that Glenwood had a widespread practice of ignoring citizen complaints and/or destroying evidence; and that the obvious consequences of the widespread practice was that officers would commit the constitutional violations at issue here.

The Puches evidence of deliberate indifference to citizen complaints is limited to three incidents, including the Puches' own in February 2004. The other incidents that triggered citizen complaints occurred in May 2002 and November 2004. The November 2004 incident post-dates the incident at issue in this case and cannot, therefore, be evidence of a policy or practice that existed at the time Johnson and Willett entered the Puches' home; it is therefore immaterial to the Puches' *Monell* claim. Thus, construing all facts in favor of the Puches,[25] they have produced evidence that, at the time of the February 2004 incident, Welsh had ignored one citizen complaint.[26] One prior incident does not prove the existence of a "widespread practice that . . . is

---

[24] To the contrary, they imply that Glenwood is in violation of its own policies. *See* Pls.' Rev. Statement of Additional Facts ¶¶ 112-114 (stating the mandates of Glenwood's written policies on citizen complaints and recycling of radio and telephone recordings).

[25] Glenwood disputes that the complaints were ignored and asserts that investigations were completed.

[26] The Puches seem to imply that the defendants withheld documents during discovery that would disclose citizen complaints, thereby stymieing the Puches' ability to prove their *Monell* claim. *See* Pls.' Rev. Statement of Additional Material Facts, Ex. 31 (affidavit of plaintiffs' counsel averring that the defendants failed to produce certain documents regarding citizen

so permanent and well settled as to constitute a custom or usage." *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (noting that, in "widespread practice" cases, "what is needed is evidence that there is a true municipal policy at issue, not a random event"); *see also Estate of Moore v. Deiter*, 395 F.3d 747, 760 (7th Cir. 2005) (no widespread practice found where prison guards improperly sprayed inmates with pepper spray on three occasions); *Palmer*, 327 F.3d at 595-96 (no widespread practice found where on two occasions guards placed inmates in a "gladiator cell block" that posed a threat to their safety).

The Puches rely heavily on case law from other circuits in support of their argument that the behavior alleged is sufficient to trigger *Monell* liability. For example, they cite a Second Circuit case that holds that "a single instance of deliberate indifference on the part of a policymaker is sufficient to provide a basis for municipal liability." *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 128 (2d Cir. 2004). They do not discuss the fact that the Seventh Circuit has unambiguously stated that a court "cannot infer a custom or practice from a single incident." *Estate of Moreland*, 395 F.3d at 760. Nor do they distinguish the Puches' case from those in the Seventh Circuit cited by Glenwood in its motion, or explain why the facts in this case require this court to adopt the reasoning of a court outside this circuit. In any event, the court agrees with Glenwood that the cases cited by the Puches are factually inapposite. In *Amnesty America*, the policymaker himself witnessed the constitutional violations perpetrated by officers against demonstrators. *Amnesty Am.*, 361 F.3d at 128. There is no evidence that Welsh observed any of the alleged misconduct. In *Henry v. County of Shasta*, 132 F.3d 512 (9th Cir.

---

complaints). If such discovery misconduct was suspected, the Puches should have moved to compel production of documents well before summary judgment or, in the alternative, filed a Rule 56(f) motion upon receipt of Glenwood's motion for summary judgment alerting the court to the problem. They did neither; an eleventh hour hypothesis that other evidence may exist does not create a genuine issue of material fact.

1997), even after a lawsuit, the county failed to take action to prevent multiple deputies from mistreating inmates accused of minor violations who refused to sign certain paperwork by stripping them naked and placing them into a rubber room. *Id.* at 520. The Puches allege prior misconduct, namely ignoring citizen complaints, in one instance.

In *Van v. City of New York*, 72 F.3d 1040 (2d Cir. 1995), the court held that the failure to monitor the actions of a single "problem officer" triggered *Monell* liability. Generally, an isolated problem with a single officer does not give rise to *Monell* liability. *See, e.g.*, *Montano*, 535 F.3d at 571 (holding that evidence of one officer being a "problem officer" was insufficient to establish deliberate indifference to the need to preemptively remove "problem officers" from the street). However, in *Van*, the city failed to monitor the actions of a particular officer who "had been the subject of numerous complaints, lodged by both colleagues and civilians; . . . had been disciplined several times, psychologically evaluated, and placed on restricted duty; and [who] had been returned to active duty, following which he was involved in several additional incidents." *Van*, 72 F.3d at 1042. Pursuant to the Second Circuit's reasoning in *Van*, the Puches' argument could be construed as a claim for municipal liability based on Glenwood's failure to supervise Willett as an allegedly known "problem officer."

"Establishing *Monell* liability based on evidence of inadequate . . . supervision requires proof of 'deliberate indifference' on the part of the local government." *See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006) (reasoning that "failure to act in response to repeated complaints" could show deliberate indifference). In *Van*, the court found such "deliberate indifference" because the officer had committed multiple known constitutional violations and the municipality had ignored repeated citizen complaints. Unlike the repeated misconduct and continuing warning signals present in *Van*, the evidence in this case shows a

single prior citizen complaint, twenty-one months before the incident with the Puches, where Willett was one of a group of officers who allegedly beat two citizens. *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Facts, Ex. 14 (Personnel Complaint Report filed by Shaun Charles in regard to an incident on May 18, 2002).[27] This cannot support the claim that Willett posed such a known danger to the community that failure to monitor his actions constitutes "deliberate indifference." The court concludes that the Puches' have failed to bring forth sufficient evidence to defeat summary judgment on their *Monell* claim.

The Puches' claim regarding Glenwood's failure to supervise Willett in the face of a prior complaint is more appropriately brought as a pure state law negligent supervision claim. However, for the reasons discussed in § II(D), *supra*, the Puches cannot establish a *prima facie* negligent supervision claim given that the court has concluded that Mr. Puch may assert claims for excessive force and assault only against Johnson, and the alleged prior misconduct is by Willett. Consequently, the court grants Glenwood's motion for summary judgment without reaching its arguments on immunity.

### III. CONCLUSION

For the reasons stated above: on the unlawful entry claim in Count I, the court denies the plaintiffs' motion for partial summary judgment and grants the defendants' motion for summary judgment; on the excessive force claim in Count I, Willett's motion for summary judgment is granted and Johnson's motion is denied without prejudice; on the municipal liability claim in Count I, Glenwood's motion for summary judgment is granted; on Count II, Willet's motion for summary judgment is granted, Johnson's motion is granted as to Mrs. Puch's claim and denied

---

[27] The defendants move to strike the plaintiffs' statements of fact as lacking evidentiary support. Although the allegations in the citizen complaints constitute hearsay, the documentary exhibits establish that such complaints exist and the exhibits are, for the most part, public court records that are independently admissible under Federal Rules of Evidence 802 or 902.

without prejudice as to Mr. Puch's claim; on Count III, Johnson and Willett's motions for summary judgment are granted in part and denied in part; on Count VI, Welsh's motion for summary judgment is granted; on Count VII, Johnson and Willett's motions for summary judgment are denied without prejudice; and on Count VIII, Johnson and Willett's motions for summary judgment are granted.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 25, 2008