## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LAURENCE H. PUCH and<br>JENNIFER C. PUCH,<br><br>Plaintiffs,<br><br>v.<br><br>VILLAGE OF GLENWOOD, ILLINOIS;<br>KEVIN WELSH, GLENWOOD CHIEF<br>OF POLICE, Individually and in his<br>official capacity; OFFICER TH.<br>JOHNSON, Glenwood Police Department,<br>Individually and in his official capacity,<br>OFFICER JOE WILLETT, Glenwood<br>Police Department, Individually and in his<br>official capacity; the GLENWOOD<br>POLICE DEPARTMENT; OTHER<br>UNKNOWN OFFICERS of the Glenwood<br>Police Department; and OTHER<br>UNKNOWN OFFICERS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Judge Joan B. Gottschall<br><br>Case No. 05 C 1114 |

## <u>MEMORANDUM OPINION & ORDER</u>

Defendants Joseph Willett and Thomas Johnson have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Plaintiff Lawrence Puch's claims for false arrest, excessive force, and conspiracy under 42 U.S.C § 1983, and on Mr. Puch's claims for assault and intentional infliction of emotional distress ("IIED") under Illinois law. For the reasons stated below, the court grants judgment on the pleadings as to Mr. Puch's false arrest claim, but denies the motion as to his excessive force, assault, conspiracy, and IIED claims.

# I. Background

On September 29, 2004, Officers Joseph Willett and Thomas Johnson of the Glenwood Police Department came to the home of Lawrence Puch and Jennifer Puch ("the Puches") in response to a 911 call in which the caller, a neighbor of the Puches, reported a screaming woman and a bleeding man in or near the Puches' home. *Puch v. Vill. of Glenwood, Ill.*, No. 05 C 1114, 2008 WL 4442610, at *1 (N.D. Ill. Sept. 25, 2008). After being refused entry to the home, the officers kicked in the door, entered the home, and arrested Mr. Puch. *Id.* Shortly thereafter, Mr. Puch requested medical treatment; he was taken to St. James Hospital, and then transferred to a mental health facility. *Id.* He now claims that he suffered an increase in the frequency of his nightmares and in suicidal thoughts, which he alleges were a consequence of this incident. *Id.* at *1, *10. The Puches filed this action against the Village of Glenwood, the Glenwood Police Department, Officers Johnson and Willett, and Glenwood Chief of Police Kevin Welsh. All of the individual defendants were sued in both their individual and official capacities. Mr. Puch claims that in the course of arresting Mr. Puch, Officer Johnson grabbed Mr. Puch, forced him to his knees, and handcuffed him. *Id.* at *6. The Puches' amended complaint contains claims against Officers Johnson and Willett for Fourth Amendment violations under 42 U.S.C. § 1983 (unlawful entry, false arrest, excessive force, and conspiracy), assault and IIED; a claim against Chief Welsh for negligent training and supervision; a *Monell* claim against the Village of Glenwood for maintaining an established practice of ignoring or failing to investigate complaints of false arrest and excessive force by Glenwood police officers, *see Monell v. Dep't of Soc. Servs. of City of*

*N.Y.*, 436 U.S. 658 (1978); and *respondeat superior*, indemnification, and negligent training and supervision claims against the Village of Glenwood.[1]

This court granted summary judgment to Officers Johnson and Willett on the unlawful entry claim, on Mrs. Puch's assault claim, and on Mrs. Puch's IIED claim; to Officer Willett on the excessive force claim and on both Mr. Puch's and Mrs. Puch's assault claims; to Chief Welsh as to the negligent training and supervision claim; and to the Village of Glenwood on the negligent training and supervision claims, as well as the *Monell* claims.[2] As a result of these decisions, Mrs. Puch no longer has any remaining claims in the suit, and Chief Welsh is no longer a defendant in any of the remaining charges. The defendants' motion for summary judgment on the false arrest claim was withdrawn without prejudice, and no motions for summary judgment were brought as to the *respondeat superior* or indemnification claims, as resolution of those two claims necessarily depends on the outcome of other surviving claims.[3] Only the conspiracy and IIED claims against Officer Johnson and Officer Willett and the excessive force and assault claims against Officer Johnson survived summary judgment.

---

[1] None of the claims brought by the Puches specifically name the Glenwood Police Department ("the Department") as a defendant. It is therefore unclear whether the Department is properly a party to any of the claims surviving summary judgment, or even properly a party to this suit. *See Sattler v. Chi. Police Dep't*, No. 09-7018, 2010 WL 3189710, at *2 (N.D. Ill. Aug. 9, 2010) ("It is well-established in Illinois that a police department is not a suable entity, even regarding claims arising under § 1983.") (citation and internal quotation marks omitted); *Wright v. Bogs Mgmt., Inc.*, No. 98-2788, 1999 WL 688775, at *5 (N.D. Ill. Mar. 31, 1999) ("A municipal police department is merely a department within a municipality, and is not a separate legal entity for § 1983 purposes."). But as no party has raised the issue, the court takes no action to dismiss the Department from the suit at this time.

[2] Although Mr. Puch is currently *pro se*, the Puches were represented by counsel at the time of the parties' cross-motions for summary judgment.

[3] There is no *respondeat superior* for § 1983 actions, *see Palka v. City of Chi.*, 662 F.3d 428, 434 (7th Cir. 2011), so the *respondeat superior* charge survives only as to Mr. Puch's assault and IIED claims. Because assault and IIED are intentional torts, *respondeat superior* is limited. *See Doe v. City of Chi.*, 360 F.3d 667, 670 (7th Cir. 2004). It will apply only if the defendants' actions were motivated, at least in part, by the belief that they were acting in furtherance of their employment. *Id.*

At summary judgment, the court also took note of the fact that on May 29, 2009, Mr. Puch had been found guilty by an Illinois jury of resisting or obstructing a peace officer in violation of 720 Ill. Comp. Stat. 5/31-1 (2009) in connection with his actions on September 29, 2004. (*See* Defs.' Mot. for Summ. J., Ex. E, ECF No. 182.) Because Mr. Puch's conviction could have an impact on this case, given that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars any § 1983 claims that necessarily imply the invalidity of a previous criminal conviction, the court denied without prejudice Officer Johnson's motion for summary judgment as to the excessive force, conspiracy, assault, and IIED claims, and Officer Willett's motion for summary judgment as to the conspiracy and IIED claims, as far as each related to Mr. Puch. *See Heck*, 512 U.S. at 487. The court invited Officers Johnson and Willett to renew their motion for summary judgment with "a full record and briefing from the parties on the import of *Heck*." *Puch*, 2008 WL 4442610 at *5-6. Rather than renewing their motion for summary judgment, the defendants filed this motion for judgment on the pleadings.

## II. LEGAL STANDARD

"[C]ourts grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.' Thus, to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998), (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The court will view the facts in the light most favorable to the nonmoving party. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). However, the court is not required to assign any weight to unsupported

conclusions of law. *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

When deciding on a Rule 12(c) motion, in general, the court must make its decision based only on the facts set forth in the pleadings themselves. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). However, there exists a narrow exception allowing the district court to "take judicial notice of matters of public record," including the proceedings and findings of other courts. *U.S. v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991).

### III. ANALYSIS

The court declined to decide the defendants' motion for summary judgment as to Mr. Puch's excessive force claim against Officer Johnson, his assault claim against Officer Johnson, and his conspiracy and IIED claims against both officers, aware that the *Heck* issue might come into play in light of Mr. Puch's conviction for resisting or obstructing a police officer. *See Puch*, 2008 WL 4442610, at *5-11. In § 1983 cases involving a plaintiff who has been convicted of a crime, *Heck v. Humphrey* requires that a district court

> consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 487. *Heck* therefore does not bar every § 1983 claim arising from an incident that also led to the plaintiff's criminal conviction; only those claims relying on facts which are incompatible with facts necessary to the plaintiff's criminal conviction

are barred. *See id.*; *see also Hardrick v. City of Bolingbrook*, 533 F.3d 758, 763-64 (7th Cir. 2008).

Although the court invited "a full record and briefing from the parties" regarding Mr. Puch's trial and conviction, the record before the court is no more complete than it was at the summary judgment stage, and the "full factual basis for the criminal conviction for comparison with the allegations and record in this case" remains a mystery. *Puch*, 2008 WL 4442610, at *11. In their motion for judgment on the pleadings and their reply, the defendants refer only to the final guilty verdict of the jury and to the original misdemeanor complaint alleging that Mr. Puch "pushed away from Don Johnson during the arrest process." (*See* Defs.' Mot. for J. on the Pleadings at 4 ("Defs.' R.12(c) Mot."), ECF No. 306; Defs.' Mot. for Summ. J. Ex. B; Defs.' Mot. for Summ. J. Ex. E.) The jury did find that Mr. Puch violated 720 Ill. Comp. Stat. 5/31-1, and therefore necessarily found that he "knowingly resist[ed] or obstruct[ed] the performance of one known by [Mr. Puch] to be a peace officer . . . of any authorized act," but there is no evidence before the court to prove that the state's final case as submitted to the jury rested entirely on the allegation that Mr. Puch "pushed away from Don Johnson during the arrest process." (*See* Defs.' Mot. for Summ. J., Ex. B.) Therefore, the court does not take it as established that this is the particular underlying act for which Mr. Puch was convicted. The court examines the five charges at issue here in light only of the demonstrable fact that Mr. Puch was convicted of physically resisting or obstructing one of the two police officers in some way in the course of their attempt to arrest him.[4]

---

[4] "It is well settled under Illinois law . . . that the resistance must be physical; mere argument will not suffice." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003).

**A. Count I – False Arrest**

The court grants judgment for the defendants on Mr. Puch's charge of false arrest, because Mr. Puch's claim is barred by *Heck*.[5] Because "a wrongful arrest claim does not necessarily undermine a conviction," *Wiley v. City of Chi.*, 361 F.3d 994, 997 (7th Cir. 2004), the court must examine the circumstances of the conviction itself. Specifically, the court must address the issue of probable cause, given that "existence of any probable cause to arrest precludes a § 1983 suit for false arrest." *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006) (citing *Morfin v. City of E. Chi.*, 349 F.3d 989, 997 (7th Cir. 2003)) (emphasis omitted).

Not all criminal convictions imply that probable cause existed for the criminal defendant's arrest, but in *Currier v. Baldridge*, 914 F.2d 993 (7th Cir. 1990), the Seventh Circuit held that a plaintiff's conviction on a charge of disorderly conduct after making physical contact with a police officer was proof that probable cause existed to arrest him on that charge, and therefore the conviction precluded the plaintiff from making a § 1983 claim for false arrest. *Currier*, 914 F.2d at 996. The court did not rely on the trial record to determine that the arresting officer's testimony supported both probable cause and the conviction, but inferred it from the nature of the charge: "Because Currier's conduct occurred in the presence of the defendants, they had probable cause to arrest him." *Id.* Likewise, because Mr. Puch's criminal action took place in the presence of the arresting officer, the arresting officer's testimony necessarily establishes both probable cause and the elements of the offense; to attack one is to attack the other. *See Patterson v. Leyden*, 947 F. Supp. 1211, 1217 (N.D. Ill. 1996) (Where "the arresting officer witnessed the

---

[5] The defendants also raise the defense of qualified immunity to Mr. Puch's false arrest claim. Because the court finds that the claim is barred by *Heck*, the court need not reach the issue of qualified immunity as it applies to the false arrest claim.

crime and the conviction [was] based on his testimony, proof of the crime is *ipso facto* proof of probable cause.") (dicussing *Currier*, 914 F.2d at 996); *Lang v. City of Round Lake Park*, 87 F. Supp. 2d 836, 843 (N.D. Ill. 2000) ("[T]here was no difference between the evidence used to determine probable cause and that used to determine guilt.") (discussing *Currier*, 914 F.2d at 996).

Here, as in *Currier*, Mr. Puch was convicted based on actions taken in the arresting officer's presence, and so the arresting officer's testimony necessarily provided proof of both probable cause and guilt.[6] If Mr. Puch were allowed to attack probable cause for his arrest,[7] he would also undermine his conviction, which *Heck* forbids—and where there is probable cause for arrest, no § 1983 false arrest claim can stand. *Pourghoraishi*, 449 F.3d at 761.

Because Mr. Puch's conviction was necessarily based on the testimony of the arresting officer—the same testimony that supported probable cause—and because a

---

[6]    Although the defendants did not argue that Mr. Puch was collaterally estopped from bringing his false arrest claim, choosing instead to focus on *Heck*, the two issues are "analogous." *See Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). Indeed, the record establishes that the defendants would prevail under a collateral estoppel theory as well: the state court found that probable cause to arrest Mr. Puch existed, which would preclude Mr. Puch from continuing to claim false arrest even absent a *Heck* bar. (Rule 56.1(a) Statement by Defs., Ex. C, Tr. of State Court Proceedings, ECF No. 125.) *Guenther v. Holmgreen*, 738 F.2d 879, 884 (7th Cir. 1984) (holding that a plaintiff is estopped from bringing § 1983 false arrest claim after a state criminal preliminary hearing establishes that there is probable cause for arrest); *see also Pourghoraishi*, 449 F.3d at 761 ("[E]xistence of any probable cause to arrest precludes a § 1983 suit for false arrest.").

[7]    The court notes Mr. Puch's contention that there were "a series of arrests" or "plural arrests," which the court takes to refer to the fact that Mr. Puch was arrested once on multiple charges, not as an allegation that Mr. Puch was arrested on multiple separate occasions. (Pl.'s Resp. to Defs.' Mot. for J. on the Pleadings ("Pl.'s Resp.") at 2, 4, ECF No. 310.) The record shows only one arrest. There is no legal basis for treating one arrest on multiple charges as if it were multiple separate arrests: "An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is *a* reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed." *Holmes v. Vill. of Hoffman Estate*, 511 F. 3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Furthermore, "[w]here an individual is arrested on multiple charges, a finding of probable cause for any one of the charges is sufficient to negate a § 1983 claim for false arrest." *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1102 (S.D. Ind. 2008) (citing *Ochana v. Flores*, 347 F.3d 266, 271 (7th Cir. 2003)).

finding of probable cause is an absolute bars a § 1983 suit for false arrest, *Pourghoraishi*, 449 F.3d at 761, Mr. Puch cannot prevail on his false arrest claim without necessarily undermining his state criminal conviction. Therefore, Mr. Puch's false arrest claim against Officers Johnson and Willett is barred by *Heck*.

## B. Count I – Excessive Force

The court denies Officer Johnson's motion for judgment on the pleadings as to Mr. Puch's claim of excessive force, because it is not barred by *Heck*. A § 1983 claim for excessive force can be premised on three scenarios: (1) force used on the plaintiff despite his non-resistance, (2) excessive force used to effect custody above what the plaintiff's resistance required, and (3) excessive force used after the plaintiff was reduced to custody. *See Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010). A claim premised only on excessive force used despite the plaintiff's non-resistance is incompatible with the plaintiff's conviction for resisting or obstructing a peace officer and must be dismissed under *Heck*. *See id.* But the latter two types of excessive force claims can survive the plaintiff's conviction for resisting a peace officer. *See id.* A plaintiff "need not repudiate his allegation that he did nothing wrong in order to maintain that he was the victim of excessive force." *Id.* Only a "position incompatible with the conviction" is barred by Heck—"the plaintiff need not adopt the defendants' view of what occurred in order to contest the degree of force used." *Id*; *see also VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) ("Thus, whether this suit is barred by *Heck* hinges on whether an action against [defendant] for excessive use of force necessarily implies the invalidity of [plaintiff's] conviction for resisting. The answer is no.").

Mr. Puch cannot prevail on his excessive force claim by continuing to premise his claim on his non-resistance—*Heck* bars that claim. But Mr. Puch has also presented evidence that, taken in the light most favorable to him, arguably suggests that Officer Johnson used excessive force to effect custody, above what Mr. Puch's resistance required, and that Officer Johnson used excessive force on Mr. Puch after he had already been reduced to custody. A reasonable trier of fact might find that grabbing Mr. Puch's arm and shoving him to the ground was not a reasonable response to Mr. Puch's act of physical resistance. *See VanGilder*, 435 F.3d at 692 (the force used by an officer to overcome the plaintiff's resistance may have been excessive, even though the plaintiff was convicted of resisting arrest). This theory of recovery is not explicitly raised by Mr. Puch in his response to the defendants' motion for judgment on the pleadings, but is implicit in his mention of the allegation that "Johnson physically grabbed him, forced him to his knees and handcuffed him" (although in the same breath Mr. Puch appears to renew his contention that force was used "despite offering no resistance"). (Pl.'s Resp. at 2.) But a *pro se* litigant should not be disadvantaged merely because he "struggle[s] to articulate his contentions in a way that would avoid problems under *Heck*." *See Evans*, 603 F.3d at 364.

Likewise, in both Mr. Puch's response to the defendants' motion for summary judgment and his response to the defendants' motion for judgment on the pleadings, Mr. Puch alleges that Officer Johnson "tortured" him with the handcuffs and "used [them] as a weapon to create pain" even after Mr. Puch had been reduced to custody. (Pls.' Resp. to Defs.' Rule 56.1 Statement, Ex. 1 at 8, ECF No. 132-2; Pl.'s Resp. at 2.) If true, a reasonable trier of fact might find that intentionally yanking on Mr. Puch's handcuffs so

that they would dig into his skin after he was reduced to custody presents a viable claim of excessive force. *See Evans*, 603 F.3d at 364. A motion for judgment on the pleadings may be granted only where there are no material issues of disputed fact, *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452; here, although *Heck* removes any dispute as to whether Mr. Puch did physically resist Officer Johnson, there are still facts in dispute regarding whether the force used to subdue Mr. Puch was reasonable, and whether Officer Johnson used excessive force on Mr. Puch after having reduced him to custody. For this reason, the court denies Officer Johnson's motion for judgment on the pleadings as to Mr. Puch's charge of excessive force.

## C. Count II – Assault

The court denies Officer Johnson's motion for judgment on the pleadings as to Mr. Puch's assault claim, because it is not collaterally estopped by his conviction. The doctrine of collateral estoppel governs the relationship between Mr. Puch's conviction and the assault charge in this case, as assault is a state-law tort. *See Brown v. City of Chi.*, 599 F.3d 772, 774 (7th Cir. 2010) ("Whether a plaintiff's § 1983 claim is barred by a state court conviction is determined by the state's rules of collateral estoppel."); *Svete v. Wunderlich*, No. 07-0156, 2008 WL 4425509, at *3 (S.D. Ohio Sept. 30, 2008) ("[T]he state law of collateral estoppel determines how to treat the federal conviction for state tort-law purposes.") (citation and internal quotation marks omitted). "For collateral estoppel to apply, (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action."

*Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)) (internal quotation marks omitted). Mr. Puch's conviction for resisting or obstructing a peace officer, without more, does not estop him from making out a plausible claim that Officer Johnson met the civil liability standard for assault: an "intentional, unlawful offer or corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994); *accord Parrish by Bowker v. Donahue*, 443 N.E.2d 786, 788 (Ill. App. Ct. 1982). This claim will stand or fall on the success of the excessive force claim: if the force used by Officer Johnson to reduce Mr. Puch to custody and used once Mr. Puch was reduced to custody was not excessive, it was lawful, and therefore cannot constitute an assault. *See Rusinowski v. Vill. of Hillside*, No. 11-4772, 2011 WL 6842509 at *4 (N.D. Ill. Dec. 29, 2011) (use of reasonable force bars both excessive force and battery claims); *see also Madlock v. City of Peoria*, No. 08-1117, 2010 WL 3853273 at *6 (C.D. Ill. Sept. 28, 2010) (reasonable use of force defeats both excessive force and assault and battery claims); *Soriano v. Town of Cicero*, No. 06-774, 2010 WL 3418260 at *7 (N.D. Ill. Aug. 25, 2010) (if the force used is not excessive, a state battery claim fails). By contrast, if the force used by Officer Johnson to reduce Mr. Puch to custody or used after Mr. Puch had been reduced to custody was excessive, then it was unlawful, and may constitute an assault.

The defendants argue that "[s]ince the jury in the criminal trial found Puch guilty of resisting or obstructing a peace officer, it also found that Johnson's actions were

lawful." (Defs.' Mot. at 9.) This is untrue. There is a wealth of case law stating in no uncertain terms that a defendant can be convicted of resisting even an unlawful arrest. *See, e.g.*, *People v. Villareal*, 604 N.E.2d 923, 925-26 (Ill. 1992) (holding a person may be convicted of resisting or obstructing an arrest even when the arrest is believed to be, and is in fact, unlawful); *City of Champaign v. Torres*, 803 N.E.2d 971, 973-74 (Ill. App. Ct. 2004) ("The fact that a police officer's conduct is later determined to be unlawful" does not mean it is not an "authorized act" under 720 Ill. Comp. State 5/31-1); *Saunders v. City of Chi.*, 320 F. Supp. 2d 735, 738-39 (N.D. Ill. 2004) (excessive force and assault claims allowed to go to trial even though lawfulness of plaintiff's arrest conceded). And even if Mr. Puch's arrest were itself lawful, the force used or threatened might still have been unlawful. *See Saunders*, 320 F.Supp.2d at 738-39 (allowing the plaintiff to contest at trial the lawfulness of force used in his arrest, even though the lawfulness of the arrest was conceded). The legality of the arrest and the legality of the force used or threatened are separate issues; hence the existence of separate and distinct claims for "false arrest" and "excessive force." For this reason, the court denies Officer Johnson's motion for judgment on the pleadings as to Mr. Puch's assault claim.

## D. Count III – Conspiracy

The court denies the defendants' motion for judgment on the pleadings as to Mr. Puch's conspiracy claim so far as it relates to his claim for excessive force. However, the court grants judgment for the defendants on Mr. Puch's conspiracy claim so far as it relates to his claim for false arrest. A *prima facie* case of a civil conspiracy under § 1983 requires the plaintiff show "(1) an express or implied agreement among the defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those

rights in the form of overt acts in furtherance of the agreement." *See Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). A "conclusion that the [plaintiff] suffered no constitutional injury" negates the second element, and therefore "forecloses relief on the conspiracy claim." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). The court determined above that Mr. Puch cannot sustain his false arrest claim, so to the extent that he claims that the defendants conspired to arrest him falsely, the court grants judgment to the defendants. However, Mr. Puch's excessive force claim does survive, so to the extent that he claims that the defendants conspired to deprive him of his right to be free from excessive force, the court denies the defendants' motion.

**E. Count VIII – Intentional Infliction of Emotional Distress**

The court denies the defendants' motion for judgment on the pleadings as to Mr. Puch's charge of intentional infliction of emotional distress, because it is not collaterally estopped by his conviction. Like Mr. Puch's assault claim, his IIED claim will stand or fall on the success of his claim for excessive force. *See Hobley v. Burge*, No. 03-3678, 2004 WL 2658075, at *9 (N.D. Ill. Oct. 13, 2004) (dismissing an IIED claim because it was premised on a time-barred excessive force claim). The defendants argue that "[s]ince Puch resisted arrest, the force Johnson used cannot, under any stretch of the imagination, be considered extreme or outrageous." (Defs.' Reply at 12, ECF No. 318.) In other words, the defendants seem to be arguing that, in reaching a guilty verdict, the state court jury found that Mr. Puch had performed some act of physical resistance that necessarily immunized the defendants' subsequent actions from any potential charge of extreme or outrageous conduct. But no such categorical rule exists. *Cf. VanGilder*, 435 F.3d at 692 ("Were we to uphold the application of *Heck* in this case, it would imply that once a

person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages."). Even if Mr. Puch had escalated his resistance significantly—say, by firing a gun at the defendants—such an act would not necessarily immunize the defendants from liability if they, for example, retaliated by torturing Mr. Puch with a cattle prod. The defendants have provided no basis for disturbing the court's previous conclusion: "if the jury finds for Mr. Puch on the underlying Fourth Amendment, assault and/or conspiracy claims, they might also conclude that a reasonable person could find such actions by a police officer to be extreme, outrageous, and intended to inflict severe emotional harm." The defendants' motion for judgment on the pleadings as to Mr. Puch's IIED claim is denied.

**F. Qualified Immunity Defense**

The defendants raise the affirmative defense of qualified immunity to Mr. Puch's excessive force claim, arguing that Mr. Puch's conviction means that any reasonable officer confronted with Mr. Puch's resistance would have concluded that the amount of force used was necessary and constitutionally appropriate, and therefore Mr. Puch's claim must fail. But the defendants do not explain what effect they believe Mr. Puch's conviction ought to have on the court's qualified immunity analysis, or cite any cases treating the two issues as related. Qualified immunity protects public officials from liability if their conduct did not violate clearly established constitutional rights of which a reasonable official would have known. *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009). There are two prongs to the qualified immunity inquiry: (1) whether the plaintiff's allegations make out a violation of a constitutional right in the first place, and (2) whether that constitutional right was clearly established at the time when the official acted. *See id.*

(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). As the court pointed out when discussing the excessive force claim, allegations that the force used to reduce Mr. Puch to custody was unreasonable or that Officer Johnson subjected Mr. Puch to excessive force after reducing him to custody are arguable constitutional violations. Therefore, the first prong of the qualified immunity inquiry is satisfied even when the court takes Mr. Puch's conviction into account.

The defendants do not engage in any meaningful way with the second prong of the qualified immunity test. Instead, their entire argument regarding the second prong consists of the following two conclusory and somewhat vague sentences in their motion: "Puch is also unable to meet his burden of proving a clearly established right. A reasonable officer, confronted with Puch's non-compliance and resistance, would have concluded that the measure of force Johnson used to make the arrest did not violate the constitution [sic]." (Defs.' Mot. at 13.) The defendants then attempt to argue that Mr. Puch, a *pro se* plaintiff, has conceded the second prong of the defense by not responding to those two sentences with citation to cases where police officers were liable for the use of excessive force in closely analogous circumstances. The court does not find that Mr. Puch has conceded the issue. It is true that Mr. Puch, as the plaintiff, will bear the ultimate burden of establishing the existence of a clearly established constitutional right. *See Delgado v. Jones*, 282 F.3d 511, 516 (7th Cir. 2002). But this is a motion for judgment on the pleadings, and all inferences must be drawn in Mr. Puch's favor. *GATX Leasing Corp.*, 64 F.3d at 1114. Further, he is not required to plead in any particular form, including in the form of a list of closely analogous cases, particularly when the defendants have given Mr. Puch so little to respond to. All Mr. Puch must do in order to

survive a Rule 12(c) motion is convince the court that it is not beyond doubt that he could prove some set of facts to support his claim. *Northern Ind. Gun & Outdoor Shows*, 163 F.3d at 452. Mr. Puch has done so by alleging that the defendants used excessive force to reduce him to custody, above what his resistance would have warranted, and by alleging that Officer Johnson "tortured" Mr. Puch with handcuffs after reducing him to custody. The court denies the defendants' motion for judgment on the pleadings raising the affirmative defense of qualified immunity to the charge of excessive force.

## IV. CONCLUSION

For the reasons stated above, the defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted as to Mr. Puch's claim for false arrest and denied as to Mr. Puch's claims for excessive force, assault, conspiracy, and IIED. Mr. Puch's claims for excessive force, assault, conspiracy, and IIED against Officer Johnson, and his claims for conspiracy and IIED against Officer Willett, must proceed to trial. Counts IV (*respondeat superior*) and V (indemnification) also remain in the suit.

ENTER:

_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED: June 27, 2012